[No. F023557. Fifth Dist. Oct. 21, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
MIGUEL ANGEL DURAN, Defendant and Appellant.

**COUNSEL**

Andrew Cappelli, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Wanda Hill Rouzan and Stan Cross, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

ARDAIZ, P. J.—By information filed in Tulare County Superior Court on September 22, 1994, appellant, Miguel Angel Duran, was charged with the murder of Feliciano Sanchez in violation of Penal Code section 187 and with discharging a firearm at an occupied vehicle in violation of Penal Code section 246. Both counts were alleged to be serious felonies within the meaning of Penal Code section 1192.7, subdivision (c)(8). It was further alleged, as to the murder charge only, that appellant discharged a firearm at an occupied motor vehicle which caused the death of another within the meaning of Penal Code section 12022.5, subdivision (b), and that the offense was a violent felony within the meaning of Penal Code section 667.5, subdivision (c)(8). On September 23, 1994, appellant entered pleas of not guilty to the charges and denied each of the special allegations.

Jury selection began on December 27, 1994. The pertinent portions of the jury selection process can be summarized as follows. At the very beginning of voir dire, the court asked all prospective jurors to listen carefully to the questions being asked so they would not have to be repeated later should the prospective juror find him or herself in the jury box. The court also informed the jury that appellant was being tried for murder and shooting at an occupied vehicle. Somewhat later during voir dire, the court stressed the importance of being fair to both sides and asked the prospective jurors whether there was any reason they thought they could not be fair to all parties. This same question was asked again a little later in the jury selection process. The court then went on to note that the present case was one involving violence and asked "whether any of you have any—have had anyone close to you who's been the victim of a violent crime or any serious

crime. I'm not talking about thefts or anything like that at the present time. But a crime of violence. And believe me, I'm not going to pry into this, but the attorneys need to know whether anybody close to you has been the victim of a serious crime involving violence against the person. If so, would you please raise your hand and we'll discuss it."

When Ms. M. was finally called to the jury box, it was learned that she was single, lived in Tulare, worked as a bartender, was majoring in history at Fresno State, and had never served on a jury before. She responded in the negative when she was specifically asked whether she would have responded to any of the court's questions had she been in the jury box earlier. Ms. M. said she did not know anyone involved in the case. She also answered "no" when she was asked whether there was "[a]nything about [her]self that [she thought] the lawyers need to know in deciding whether [she] would be a good juror in their case?" Ms. M. assured the court that she could be fair to both sides. She was ultimately allowed to sit on the jury that was empaneled to try the case.

On January 3, 1995, the jury found appellant guilty of murder in the second degree and of having discharged a firearm at an occupied vehicle. The jury also found true the enhancement associated with the murder charge.

On February 1, 1995, the date originally set for sentencing, defense counsel informed the court that, approximately two weeks earlier, he had seen one of the jurors from this trial, Ms. M., watching the proceedings in an unrelated murder trial. During his brief discussion with her at that time, he learned that she was sitting with the cousin of the victim in that case. He asked the court to continue the sentencing hearing to allow him time to pursue this as a possible basis for a new trial in that she had failed to disclose this information during voir dire. The court granted his request and set the briefing schedule as follows: appellant's motion was to be served on the prosecution no later than February 21, 1995, with the prosecution having until March 3, 1995, the date scheduled for hearing on the motion, to file its opposition, if any, to the motion.

Appellant did not file his motion for new trial until February 22, 1995. Accompanying the motion was a declaration by a defense investigator who stated that he had contacted one of the jurors who decided appellant's case, Ms. M., on February 21, 1995. The investigator, Mr. Gonzalez, made the following statement with respect to that contact:

"On this date I finally was able tomake [sic] CONTACT WITH Jana M[.] and spoke to her on the phone. She stated that she dated Steve Adams who

is apparently a cousin to Jason McAfee, a victim in another 187 case. She stated that shebegan [sic] dating Steve Adams about the same time or concurrently to her jury service in the Duran case. She stated that she only dated Steve for a few weeks, having a couple of dates with him. She did state that she did go to court with him a couple of times for moral support. She emphaized [sic] that this relationship did not have anything to do with her decision in the Duran case, annd [sic] did not affect her emtionally [sic] at all. She stated she is not seeing him right now."

In his written motion, appellant argued that Ms. M. had committed misconduct by failing to disclose her relationship with Steve Adams during voir dire. Citing Penal Code section 1181, subdivision 2; *In re Hitchings* (1993) 6 Cal.4th 97, 110 [24 Cal.Rptr.2d 74, 860 P.2d 466]; *In re Stankewitz* (1985) 40 Cal.3d 391, 396-402 [220 Cal.Rptr. 382, 708 P.2d 1260], and *People* v. *Sutter* (1982) 134 Cal.App.3d 806 [184 Cal.Rptr. 829], appellant argued that a new trial was warranted because the presumption of prejudice that flowed from this act of concealment could not be rebutted.

In their opposition papers, the People argued that the proper way to present such information was through the use of juror affidavits—not investigator declarations—and, since appellant had used the latter, the information contained in the declaration constituted hearsay. In support of their position, the People cited *People* v. *Cox* (1991) 53 Cal.3d 618, 697-698 [280 Cal.Rptr. 692, 809 P.2d 351]; *People* v. *Scott* (1982) 129 Cal.App.3d 301, 309 [180 Cal.Rptr. 891], overruled in *People* v. *Hedgecock* (1990) 51 Cal.3d 395, 419 & fn. 9 [272 Cal.Rptr. 803, 795 P.2d 1260]; *People* v. *Federico* (1981) 127 Cal.App.3d 20, 38-39 [179 Cal.Rptr. 315]; and *People* v. *Villagren* (1980) 106 Cal.App.3d 720, 729-730 [165 Cal.Rptr. 470]. They asked the court to disregard the declaration entirely and deny the motion based on the complete lack of evidence to support it. In the event the court decided to consider the declaration, the People argued that the information contained therein did not demonstrate juror misconduct; accordingly, they asked that the motion be denied.

During the March 3d hearing, the parties agreed to put the matter over as there was no interpreter available. Before doing so, the court and counsel engaged in some discussion as to whether appellant would be required to subpoena the juror in question. The court advised the parties that it intended to accept the declaration of the investigator at the next hearing as an offer of proof as to what the juror would testify to if called upon to do so. The court would then make a determination based on that offer as to whether it would be necessary to have the witness appear and testify in person.

When the motion was finally heard on March 8th, defense counsel initially presented the same arguments as he had in his pleadings but added that the

other homicide case was one involving high emotions and a lot of publicity. Defense counsel argued that, had he known of Ms. M.'s involvement in the other case, he would have had the opportunity to "either question her further along those lines, or actually to peremptorily challenge her if not for cause." He then asked the court to provide him with the names and addresses of the remaining jurors so that he could contact them and ascertain whether Ms. M.'s involvement in the other homicide case was ever mentioned during deliberations in appellant's case.

The prosecutor argued against disclosure of the other jurors' information since there had been no showing that Ms. M. had raised the issue during deliberations. She also noted that the juror's relationship with the cousin of the murder victim in the other case was very limited and that the juror expressly and emphatically stated that her relationship with Mr. Adams had nothing to do with her decision in appellant's case. The prosecutor noted that appellant had based his motion on subdivision 2 of section 1181 of the Penal Code and pointed to the lack of any evidence showing the jury had received any evidence out of court. Accordingly, the prosecutor asked that the motion be denied.

In ruling on the motion, the court made the following comments:

"I'm going to deny the defendant's motion for new trial. The declaration accepted at its face value does not establish misconduct. The questions put to the prospective jurors along those lines I remember quite well, because these are almost word-for-word the same questions I put in every criminal case, is to the effect that whether a juror has anyone close to them or close personal friend, close relative who had been the victim of a serious crime.

"The individual referred to here I don't think fits into the category as a close personal friend. Someone that had apparently a casual dating relationship that started at about the time this litigation was going on. So I don't think the juror's failure to disclose this would be considered misconduct.

"I'm going to deny the request to reopen this matter for questioning of other jurors. Defense has had ample opportunity to do that and I think the request is untimely at this juncture, especially in view of the fact that there is no suggestion that this situation with Miss [M.] was in any way subject of discussion in the jury room."

The court then proceeded to impose judgment. Appellant was denied probation and ordered imprisoned for a term of 15 years to life on the murder conviction plus a term of 5 years on the enhancement. The midterm

of five years imposed on the remaining count was stayed; said stay to become permanent pending appellant's successful completion of the other unstayed terms.

Notice of appeal was timely filed on April 12, 1995.

DISCUSSION

Appellant's arguments can be classified into two areas of inquiry: (1) whether the trial court erred in denying his motion for new trial based on juror misconduct; and (2) whether the trial court erred in denying his request for the jurors' personal information that would have allowed him to further investigate his claim of juror misconduct. Each topic shall be addressed in turn.

I.

*Denial of the Motion for New Trial*

Here, appellant maintains the trial court erred when it denied his request pursuant to Penal Code section 1181, subdivision 2, for a new trial based on his claim of juror misconduct.[1] Respondent disagrees, as do we.

We begin with the basic proposition that one accused of a crime has a constitutional right to have the charges against him or her determined by a fair and impartial jury. (U.S. Const., 6th & 14th Amends.; Cal. Const., art. I, § 16; *In re Hitchings, supra*, 6 Cal.4th at p. 110; *People v. Wheeler* (1978) 22 Cal.3d 258, 265 [148 Cal.Rptr. 890, 583 P.2d 748].) A prospective juror's ability to be fair and impartial is explored during the process of voir dire. The significance of this process has been explained by our Supreme Court as follows:

" '*Voir dire* examination serves to protect [a criminal defendant's right to a fair trial] by exposing possible biases, both known and unknown, on the part of potential jurors. Demonstrated bias in the responses to questions on voir dire may result in a juror's being excused for cause; hints of bias not sufficient to warrant challenge for cause may assist parties in exercising their peremptory challenges. The necessity of truthful answers by prospective jurors if this process is to serve its purpose is obvious.' (*McDonough Power*

---

[1]This section provides:

"When a verdict has been rendered or a finding made against the defendant, the court may, upon his application, grant a new trial . . . [¶] . . . [¶] . . . [w]hen the jury has received any evidence out of court, other than that resulting from a view of the premises, or of personal property . . . ." (Pen. Code, § 1181, subd. 2.)

*Equipment, Inc.* v. *Greenwood* (1984) 464 U.S. 548, 554 [78 L.Ed.2d 663, 670, 104 S.Ct. 845] (plur. opn. of Rehnquist, J.).)

"A juror who conceals relevant facts or gives false answers during the voir dire examination thus undermines the jury selection process and commits misconduct. [Citations.]" (*In re Hitchings, supra,* 6 Cal.4th at pp. 110-111, fn. omitted; accord, *People* v. *Blackwell* (1987) 191 Cal.App.3d 925, 929 [236 Cal.Rptr. 803].)

 Where a party seeks a new trial based upon jury misconduct, the court must undertake a three-step inquiry. First, the court must determine whether the evidence presented for its consideration is admissible. (*People* v. *Hord* (1993) 15 Cal.App.4th 711, 724 [19 Cal.Rptr.2d 55]; *People* v. *Perez* (1992) 4 Cal.App.4th 893, 906 [6 Cal.Rptr.2d 141].) Declarations of jurors may be used to show that a juror concealed bias or other reason for disqualification by providing false answers during voir dire. (E.g., *In re Hitchings, supra,* 6 Cal.4th at p. 103; *In re Stankewitz, supra,* 40 Cal.3d at pp. 396-398; *People* v. *Hord, supra,* 15 Cal.App.4th at pp. 721-722; *People* v. *Atkins* (1988) 203 Cal.App.3d 15, 27 [249 Cal.Rptr. 863]; disapproved on other grounds in *People* v. *Jones* (1990) 51 Cal.3d 294, 322 [270 Cal.Rptr. 611, 792 P.2d 643]; *People* v. *Blackwell, supra,* 191 Cal.App.3d at pp. 929-930; *People* v. *Sutter, supra,* 134 Cal.App.3d at p. 819.) When considering these declarations, the trial court must take great care not to overstep the boundaries established by Evidence Code section 1150. As pertinent, this section provides: "Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined." (Evid. Code, § 1150, subd. (a).) This statute has thus been found to allow consideration of evidence of " 'overt acts'—that is, such statements, conduct, conditions, or events as are 'open to sight, hearing, and the other senses and thus subject to corroboration' . . . ." (*In re Stankewitz, supra,* 40 Cal.3d at p. 398, quoting *People* v. *Hutchinson* (1969) 71 Cal.2d 342, 349-350 [78 Cal.Rptr. 196, 455 P.2d 132].) As a result, Evidence Code section 1150 may be violated "not only by the admission of jurors' testimony describing their own mental processes, but also by permitting testimony concerning statements made by jurors in the course of their deliberations. In rare circumstances a statement by a juror during deliberations may itself be an act of misconduct, in which case evidence of that statement is admissible. [Citation.] But when a juror in the course of deliberations gives

the reasons for his or her vote, the words are simply a verbal reflection of the juror's mental processes. Consideration of such a statement as evidence of those processes is barred by Evidence Code section 1150." (*People* v. *Hedgecock, supra,* 51 Cal.3d at pp. 418-419.)

Once the court finds the evidence is admissible, it must then consider whether the facts establish misconduct. (E.g., *In re Stankewitz, supra,* 40 Cal.3d at p. 398; *People* v. *Hord, supra,* 15 Cal.App.4th at p. 724; *People* v. *Perez, supra,* 4 Cal.App.4th at p. 906.) The trial court may conduct an evidentiary hearing to determine the truth of the allegations set out in the declarations. (*People* v. *Hedgecock, supra,* 51 Cal.3d at p. 415; *People* v. *Hord, supra,* 15 Cal.App.4th at pp. 722-723.) "The defendant is not entitled to such a hearing as a matter of right; the trial court has discretion to hold such a hearing." (*Ibid.*) "The hearing should not be used as a 'fishing expedition' to search for possible misconduct, but should be held only when the defense has come forward with evidence demonstrating a *strong possibility* that prejudicial misconduct has occurred. Even [then], an evidentiary hearing will generally be unnecessary unless the parties' evidence presents a material conflict that can only be resolved at such a hearing." (*People* v. *Hedgecock, supra,* 51 Cal.3d at p. 419, italics added; accord, *People* v. *Hord, supra,* 15 Cal.App.4th at pp. 722-723.)

Finally, if misconduct is found to have occurred, the court must determine whether the misconduct was prejudicial. (*People* v. *Hord, supra,* 15 Cal.App.4th at p. 724; *People* v. *Perez, supra,* 4 Cal.App.4th at p. 906.) Once misconduct has been established, prejudice is presumed; reversal is required unless the reviewing court finds, upon examination of the entire record, there is no substantial likelihood that any juror was improperly influenced to the defendant's detriment. (*People* v. *Clair* (1992) 2 Cal.4th 629, 668 [7 Cal.Rptr.2d 564, 828 P.2d 705]; *People* v. *Hord, supra,* 15 Cal.App.4th at p. 725; *People* v. *Sutter, supra,* 134 Cal.App.3d at p. 819.)

The trial court's determination on a motion for new trial " ' "rests so completely within [its] discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears." ' " (*People* v. *Delgado* (1993) 5 Cal.4th 312, 328 [19 Cal.Rptr.2d 529, 851 P.2d 811].) With these principles in mind, we turn to the case before us.

At the outset, we note that Ms. M.'s statement to the effect that her relationship with Mr. Adams had no effect on her decision in this matter was inadmissible under Evidence Code section 1150 as a verbal reflection of her mental processes during deliberations. (See also *People* v. *Hedgecock, supra,* 51 Cal.3d at pp. 418-419.) With respect to the remaining evidence contained

in the declaration, the record shows the parties agreed that the court could consider the investigator's declaration as an offer of proof as to what Ms. M. would testify to should she be called upon to do so.

We turn then to appellant's claimed need for an evidentiary hearing. While the prosecutor challenged the form of the evidence set forth in the declaration, she did not dispute its truthfulness. There was therefore no material conflict which would require an evidentiary hearing to resolve. Thus, to the extent that the court's ruling can be seen as a denial of a request for an evidentiary hearing, we find no abuse of discretion.

Appellant goes on to argue that, at a minimum, he should have been given an opportunity to question Ms. M. further about her relationship with Mr. Adams. This argument overlooks a number of things. First, appellant, acting through his counsel or his investigator, had ample opportunity to question Ms. M. regarding this relationship prior to the hearing on the motion. Second, there was no material conflict in the evidence presented in support of the motion for new trial and thus, no need for an evidentiary hearing. Third, such hearings are not to be used as fishing expeditions.

Nor do we find any abuse of discretion in the court's denial of appellant's motion on its merits.[2] The question at issue was whether any of the prospective jurors had anyone "close" to them who had been the victim of a violent or serious crime. Ms. M. answered this question in the negative during voir dire.

Even if we were to construe the declaration in a manner most favorable to appellant, we do not think a layperson would believe Mr. Adams met the definition of "victim." But even if we were to assume that they would have thought of him as such, we nonetheless conclude the offer of proof was insufficient to establish that Ms. M. concealed any information or gave false answers during voir dire.

The information gathered posttrial does not show that Ms. M. and Mr. Adams had a close relationship at any time before or during jury selection in this case. Indeed, the investigator's declaration does not even definitively show when their dating relationship began. Instead, it showed only that the two began dating "about the same time or concurrently to [Ms. M.'s] jury service" in this case. Ms. M.'s jury service spanned a total of five days. Given these circumstances, it is entirely possible that Ms. M. and Mr. Adams

---

[2]Appellant has restricted his claim of misconduct to the voir dire proceedings. Consequently, we do not decide whether any juror misconduct occurred at any other time in the proceedings.

began dating after voir dire was concluded. If so, then clearly no misconduct occurred during voir dire.

But even if we were to assume that all of the dates and one of the court appearances in the unrelated case took place *before* voir dire in this case,[3] we still cannot find that appellant carried his burden of establishing a strong possibility that the relationship between Ms. M. and Mr. Adams was anything more than casual—a finding necessary to support appellant's claim that Ms. M.'s voir dire response was untruthful. Absent this showing, there was no misconduct. Without misconduct, there was no error on the part of the trial court in denying the motion for new trial.

## II.

### *Denial of the Request for Disclosure of Juror Information*

Appellant also takes issue with the trial court's denial of his request for release of the remaining jurors' information. Relying solely on the language of Code of Civil Procedure section 206, subdivision (f), appellant argues the court was required to provide him with this information simply upon request. He makes a rather oblique reference to *People* v. *Scott* (Cal.App. 1994) which, at the time appellant's brief was filed, was before the California Supreme Court on a grant of review. (Review granted September 29, 1994 (S041272).) However, on February 15, 1996, the high court dismissed the appeal as having been improvidently granted. The high court did not, however, include an order directing that the case be republished.

Respondent asks that we uphold the trial court's decision denying appellant's request as untimely or, alternatively, find the motion was properly denied as lacking a sufficient showing of misconduct so as to entitle him to this information. In support of this position, respondent cites *People* v. *Barton* (1995) 37 Cal.App.4th 709, 716 [43 Cal.Rptr.2d 671]; *People* v. *Rhodes* (1989) 212 Cal.App.3d 541, 551-553 [261 Cal.Rptr. 1]; and *People* v. *Atkins, supra,* 203 Cal.App.3d at page 28.

Appellant counters that Code of Civil Procedure section 206 does not impose any limitations on when the request must be made. He also insists his request was timely if, in fact, the statute imposes such a requirement.

---

[3]The record clearly shows that one of the occasions when Ms. M. accompanied Mr. Adams to court in the unrelated homicide case took place after the verdict in this case had been rendered. Defense counsel informed the court during the February 1, 1995, hearing that he had seen Ms. M. in attendance at the other homicide trial two weeks earlier. The verdict in this case was reached nearly one month earlier on January 3, 1995.

In order to put the parties' arguments into proper perspective, it is necessary to examine the metamorphosis of the law as it pertains to requests for juror information. We begin with our opinion in *People* v. *Atkins, supra,* 203 Cal.App.3d 15—an opinion decided before section 206, subdivision (f) or section 237 of the Code of Civil Procedure were enacted.

The defendant in *Atkins* moved the court to declare a mistrial based on the speed with which the jury returned its verdict after one of the original jurors was replaced with an alternate. (*People* v. *Atkins, supra,* 203 Cal.App.3d at p. 23.) The court denied the motion. The defendant then asked the court to provide him with the jurors' addresses or phone numbers so that he could pursue his motion for new trial based on the asserted misconduct. The trial court denied the motion based on its belief that the defendant had ample opportunity to question the jurors on this topic at the conclusion of trial. (*Id.* at p. 24.)

On appeal, we upheld the denial based on the untimeliness of the request under Penal Code section 1050. (*People* v. *Atkins, supra,* 203 Cal.App.3d at p. 28.) This section currently imposes, as it did then, a duty on the trial courts to expedite *all* proceedings in criminal cases and to grant continuances only upon a showing of "good cause." (Pen. Code, § 1050, subds. (a), (e).)

We also discussed, albeit in dicta, the balancing of two competing interests in the disclosure of such information—the individual jurors' constitutional right to privacy and the strong public interest in the ascertainment of truth in criminal proceedings due to the involvement of life and liberty. (*People* v. *Atkins, supra,* 203 Cal.App.3d at pp. 27-28.) We ultimately concluded that the latter interest outweighed the "limited and narrow intrusion of releasing the names and addresses of the jurors." (*Id.* at p. 28.)

In *People* v. *Rhodes, supra,* 212 Cal.App.3d 541, the Third District was called upon to decide when a posttrial request for juror information ought to be granted. The court went through a far more expansive weighing of competing interests. The following excerpts provide some insight into that analysis:

"The jury is a cornerstone of our nation's judicial system. In California, the inviolate right to trial by jury is guaranteed by article I, section 16 of the California Constitution. As a matter of public policy, the integrity of our jury system must be carefully safeguarded. [Citation.]

"The continuing viability and vitality of the jury process depends on public support and participation . . . . While we recognize the importance

of voir dire in obtaining an impartial jury [citation], the increasing scrutiny being placed on prospective jurors may make it more difficult to obtain willing participants in this vital civic duty. . . .

"Permitting parties in a lawsuit as a matter of right to have addresses and telephone numbers to contact and interrogate jurors about their verdict would further jeopardize our jury process. As noted by our Supreme Court, 'once aware that after sitting through a lengthy trial he himself may be placed on trial, only the most courageous prospective juror will not seek excuse from service.' [Citation.]

"Few would quarrel with the proposition that the willingness of people to serve on a jury would be chilled by the knowledge that, once deliberations are complete, a party to the action may have unlimited access to the home address and telephone number of each juror.

"Our jury system also depends upon adherence to the public policy which discourages harassment of jurors by losing parties seeking to have the verdict set aside. [Citation.] It takes little imagination to recognize that disclosure of jurors' addresses and telephone numbers has the potential to run afoul of th[is] important interest . . . .

"Such disclosure also may foster conduct which undermines another strong public policy: the reduction of incentives for [postverdict] jury tampering. 'A single juror who reluctantly joined in a verdict is likely to be sympathetic to the overtures of defeated parties, and to be persuadable to the view that his own consent rested upon false or impermissible considerations . . . .' [Citation.]

"Another vital public policy seeks to promote free and open discussion among jurors. '[I]f jury deliberations are subject to compulsory disclosure, independent thought and debate will surely be stifled.' [Citation.]

"In addition, the public has a recognized interest in promoting the finality of verdicts. [Citation.] Unlimited disclosure o[f] juror addresses and phone numbers would undoubtedly encourage parties to engage in an intrusive and lengthy inquiry into the deliberation process in search of information with which to impeach the verdict. . . .

"On the other hand, there exists a 'strong public interest in the ascertainment of the truth in judicial proceedings, including jury deliberations.' [Citation.] A verdict reached by prejudicial juror misconduct must not be permitted to stand. [Citations.] Lifting the veil of postverdict secrecy to

expose juror misconduct serves an important public purpose. ' "[T]o hear such proof would have a tendency to diminish such practices and to purify the jury room, by rendering such improprieties capable and probable of exposure, and consequently deterring jurors from resorting to them." ' [Citations.]

"Another public policy involved is the right of privacy guaranteed by article I, section 1 of the California Constitution. The wholesale disclosure of jurors' names, addresses and telephone numbers clearly has an impact on a juror's right to privacy. However, . . . ' "[t]he constitutional right of privacy is not absolute; it may be abridged to accommodate a compelling public interest." ' [Citations.] 'When the right to disclosure of information conflicts with the constitutional right of privacy, there should be a "careful balancing" of the "compelling public need" for discovery, against the "fundamental right of privacy." ' [Citation.]" (212 Cal.App.3d at pp. 548-550.)

The court went on to set out an example of the type of abuse that can occur with the disclosure of such information and ultimately concluded that: "[U]pon timely motion, counsel for a convicted defendant is entitled to the list of jurors who served in the case, including addresses and telephone numbers, if the defendant sets forth a sufficient showing to support a reasonable belief that jury misconduct occurred, that diligent efforts were made to contact the jurors through other means, and that further investigation is necessary to provide the court with adequate information to rule on a motion for new trial." (212 Cal.App.3d at pp. 551-552.)

Then, in 1992, the Legislature enacted Senate Bill No. 1299 (1991-1992 Reg. Sess.) which amended section 206 to include subdivision (f) and added section 237 to the Code of Civil Procedure. This legislation was sought in an effort to remedy a defect in the existing law which became apparent after a man convicted of the murder of his estranged wife and the attempted murder of his daughter hired an investigator to get the names and addresses of the jurors who convicted him "for the presumed purpose of working harm." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1299 (1991-1992 Reg. Sess.) as introduced on Feb. 25, 1992.) It was noted that the then current version of section 206 did not limit or restrict, in any way, the acquisition, possession, or use of the addresses or phone numbers of jurors by individuals who might pass that information along to criminal defendants. (*Ibid.*)

As proposed, subdivision (f) of section 206 of the Code of Civil Procedure provided:

"Notwithstanding Section 237, a defendant who is unrepresented by counsel may, following final adjudication of a criminal proceeding, may request

that the court provide personal juror information necessary for the defendant to communicate with jurors for the purpose of developing issues on appeal. This information may include jurors names, addresses, and telephone numbers. Pursuant to this subdivision, the court may, in its discretion, do either of the following:

"(1) Provide the requested information to the defendant.

"(2) Mail the request to each juror specified." (Sen. Bill No. 1299 (1991-1992 Reg. Sess.) as amended Mar. 4, 1992.)

As finally enacted, subdivision (f) of section 206 provided:

"Notwithstanding Section 237, a defendant or defendant's counsel may, following final adjudication of a criminal proceeding, request that the court provide personal juror information within the court's records necessary for the defendant to communicate with jurors for the purpose of developing issues on appeal or any other lawful purpose. This information may include jurors' names, addresses, and telephone numbers.

"Pursuant to this subdivision, the court shall provide the information requested to the defendant's counsel or any agent of the defendant's counsel but may limit dissemination as provided under subdivision (c) of Section 237." (Stats. 1992, ch. 971, § 2.)

Code of Civil Procedure section 237, as enacted and relevant, stated:

"(a) The names of qualified jurors drawn from the qualified juror list for the superior court shall be made available to the public upon request unless the court determines, pursuant to subdivision (b), that a compelling governmental interest requires that this information should be kept confidential or its use limited in whole or in part.

"(b) At the conclusion of a criminal jury proceeding, the court may, upon a juror's request, motion of counsel, or its own motion, order that all or part of the court's record of personal juror identifying information be conditionally sealed upon finding that a compelling governmental interest warrants this action. For purposes of this section, 'compelling governmental interest' includes, but is not limited to, protecting jurors from physical harm or the threat of physical harm. Any person may petition the court for access to these records and, in the absence of an express finding of continuing risk, the records shall be made available.

"(c) The court may limit access to records sealed under subdivision (b) to the defendant, the defendant's counsel, or the defendant's investigator for

the purpose of developing issues on appeal or for any other lawful purpose. . . ." (Stats. 1992, ch. 971, § 3.)

In *People* v. *Simms* (1994) 24 Cal.App.4th 462 [29 Cal.Rptr.2d 436], Division One of the Second District acknowledged the Legislature's concern over juror safety but interpreted this enactment as a rejection of the "preliminary showing" procedure devised in *People* v. *Rhodes, supra,* 212 Cal.App.3d 541. (24 Cal.App.4th at pp. 468-469.) It also noted that neither Code of Civil Procedure section 206 nor section 237 required that the motion be made at any particular time and, hence, rejected the timeliness requirement we imposed in *People* v. *Atkins, supra,* 203 Cal.App.3d 15. (24 Cal.App.4th at p. 469, fn. 7.) The court went on to conclude that: "Under the plain language of both statutes, all the convicted defendant has to show is that he wants the requested information 'for the purpose of *developing* issues on appeal or for any other lawful purpose.' (§§ 206, subd. (f), 237, subd. (d), italics added.) No more is required. (See Legis. Counsel's Dig., Sen. Bill No. 1299 (1991-1992 Reg. Sess.) ['This bill would *require* the court to provide the requested information to the defendant's counsel . . . but would permit the court to limit dissemination, as specified' (italics added).].)" (*People* v. *Simms, supra,* 24 Cal.App.4th at p. 469.) In reaching this conclusion, the court reasoned that where, as there, "the Legislature has enacted a statute addressing an issue which has been the subject of judicial construction—it is presumed the Legislature was fully cognizant of such construction and, when the statute deviates from the judicial construction, the logical inference is that the lawmakers intended to alter the law. [Citation.]" (*Ibid.*)

The *Simms* court concluded the trial court erred in denying the defendant's request for a single juror's information and utilized a limited remand to remedy the error. (24 Cal.App.4th at p. 469.)

Division Seven of the Second District took a different approach in *People* v. *Barton, supra,* 37 Cal.App.4th 709. The court acknowledged the decision in *Simms* but nonetheless chose to rely on the decisions in *People* v. *Rhodes, supra,* 212 Cal.App.3d 541, 545 and *Jones* v. *Superior Court* (1994) 26 Cal.App.4th 1202, 1208-1212 [31 Cal.Rptr.2d 890] to rule that a criminal defendant has "no absolute right to [personal juror] information. Absent a sufficient showing of good cause or need for the request, a trial court may properly deny the request." (*People* v. *Barton, supra,* 3 Cal.App.4th at p. 716.) The court regarded much of the language in *Simms* as dicta since the defendant therein "clearly established good cause for the name and telephone number of a single juror." (*Id.* at p. 716, fn. 7.)

In January of 1996, Division Two of the Fourth District issued its opinion on the subject in *People* v. *Granish* (1996) 41 Cal.App.4th 1117 [49

Cal.Rptr.2d 45]. The court reviewed the statutory and judicial developments that had occurred in the area as well as the competing interests involved. It then concluded that subdivision (f) of section 206 of the Code of Civil Procedure as it stood prior to the pre-1995 amendments[4] required a defendant to show good cause for the disclosure. (*People* v. *Granish, supra,* 41 Cal.App.4th at p. 1128.)

In reaching this decision, the court relied primarily on the statutory language that allowed " 'a defendant or defendant's counsel [to] request that the court provide personal juror information . . . *necessary* for the defendant to communicate with jurors *for the purpose of developing issues on appeal or any other lawful purpose.*' " (*People* v. *Granish, supra,* 41 Cal.App.4th at p. 1128, citing Code Civ. Proc., former § 206, subd. (f), italics in original.) The court read the mandatory language of the last line of section 206, subdivision (f) as limiting the persons to whom disclosure can be made *if* access is granted. (41 Cal.App.4th at p. 1129.)

The final published case interpreting Code of Civil Procedure former section 206 comes from the Third Division of the Second District. In *People* v. *Wilson* (1996) 43 Cal.App.4th 839 [50 Cal.Rptr.2d 883], the court rejected the interpretation advanced in *Simms* and instead held that: "[T]he last sentence of section 206 of the Code of Civil Procedure merely regulates to whom, not whether, disclosure shall be made. In addition, former subdivision (f) of section 206 . . . limits the disclosure 'for the purpose of developing issues on appeal or any other lawful purpose.' Although this language is broad, it does indicate a legislative intent to require the defendant to show good cause for disclosure and not engage in merely a fishing [expedition]." (*People* v. *Wilson, supra,* 43 Cal.App.4th at p. 852.)

It would indeed be anomalous if a statute clearly concerned with protection of juror privacy were to be construed as a vehicle that removed any real privacy protection from intrusion without good cause. We conclude that good cause must be shown and concur with *Wilson's* interpretation of Code of Civil Procedure former section 206, subdivision (f). However, this does not end our inquiry for there remains the question of timeliness of appellant's motion. In this case, the issue of timeliness has a direct impact on

[4]In 1995, subdivision (f) of section 206 of the Code of Civil Procedure was amended to read: "Pursuant to Section 237, a defendant or defendant's counsel may, following the recording of a jury's verdict in a criminal proceeding, petition the court for access to personal juror information within the court's records necessary for the defendant to communicate with jurors for the purpose of developing a motion for new trial or any other lawful purpose. This information may include jurors' names, addresses, and telephone numbers. The court shall consider all requests for juror identifying information pursuant to Section 237." (Stats. 1995, ch. 964, § 2.)

whether good cause existed to support disclosure of the jurors' personal information.

While Code of Civil Procedure former section 206 does not contain an express time limitation, it does impose a requirement that the information be sought for a lawful purpose. As such, we must consider the request in light of any time limitations associated with the purpose for which the information is sought. For clearly, if the defendant or the defendant's counsel is precluded from using the information for that expressed purpose due to time constraints, his or her request cannot be said to have been made for a lawful purpose. The facts of this case demonstrate this principle well.

Here, appellant was clearly seeking the information in hopes of obtaining additional support for his motion for new trial. As such, we must look to see if his request was timely made in light of the time constraints imposed on the bringing of, or hearing on, a motion for new trial.

The Penal Code makes clear that an "application for a new trial must be made *and determined* before judgment . . . ." (§ 1182, italics added.) Therefore, in order for the requested information to be used for the lawful purpose for which it was sought, it would be necessary to continue not only the hearing on appellant's motion for new trial but the imposition of judgment as well. As such, Penal Code section 1050 came into play.

In *Atkins*, we upheld the denial of the defendant's request for juror information based on its untimeliness under Penal Code section 1050. (*People* v. *Atkins, supra,* 203 Cal.App.3d at p. 28.) That section now imposes, as it did then, a duty on the courts to expedite *all* proceedings in criminal cases and allows for continuances only upon a showing of "good cause." (Pen. Code, § 1050, subds. (a), (e).) "Such a showing requires, inter alia, a demonstration that both the party and counsel have used due diligence in their preparations." (*People* v. *Mickey* (1991) 54 Cal.3d 612, 660 [286 Cal.Rptr. 801, 818 P.2d 84]; *People* v. *Grant* (1988) 45 Cal.3d 829, 844 [248 Cal.Rptr. 444, 755 P.2d 894].)

Appellant, however, failed to make the requisite showing below. It was mid-January when defense counsel first learned of Ms. M.'s relationship with Mr. Adams. If counsel suspected that Ms. M. committed misconduct by mentioning either this relationship or her attendance at the other homicide trial to her fellow jurors, he could easily have questioned her about it at that time. He also could have sought the remaining jurors' personal information at this time. But without any explanation, he chose not to do so. Instead, he first raised this issue on the second setting for the imposition of judgment some six weeks later.

We cannot consider the date defense counsel claims to have first learned of the misconduct (i.e., February 21st) since he offered no explanation as to why it took so long for his investigators to contact Ms. M. and question her about this topic. As such, he failed to show due diligence was exercised in the attempts to contact her.

Since appellant failed to show he exercised due diligence in pursuing this claim, there was no basis shown for continuing the hearing on the motion for new trial. Since appellant sought this information to support his motion for new trial, there was no longer a lawful purpose to be served by releasing this information. The trial court thus acted properly in denying the untimely request for juror information.

The judgment is affirmed.

Thaxter, J., and Buckley, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 19, 1997.