Filed 3/11/14  P. v. Burke CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CONOR EAMON BURKE,<br><br>    Defendant and Appellant. | B248616<br><br>(Los Angeles County<br>Super. Ct. No. SA079870) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Antonio Barreto, Jr., Judge.  Reversed in part, modified in part, affirmed in part, and remanded.

Sheila Tuller Keiter, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Margaret E. Maxwell and Eric E. Reynolds, Deputy Attorneys General, for Plaintiff and Respondent.

# I.  INTRODUCTION

A jury convicted defendant, Conor Eamon Burke, of first degree residential burglary in violation of Penal Code section 459.[1]  The jury further found the offense was a violent felony because another person was present at the time of the burglary.  (§ 667.5, subd. (c)(21).)  The trial court found this was an unusual case and granted defendant five years' formal probation.  (§ 462.)  Defendant contends it was an abuse of discretion to deny his petition for access to personal juror identifying information.  (Code Civ. Proc., §§ 206, subd. (g), 237, subd. (b).)  We find no abuse of discretion.  We modify the judgment with respect to the fine and assessments imposed as conditions of probation.  We reverse the judgment in part as to the local crime prevention programs fine imposed under section 1202.5, subdivision (a).  We affirm the judgment in all other respects.

# II.  DEFENDANT'S PETITION FOR JUROR IDENTIFICATION INFORMATION

Following the guilty verdict, defendant filed a petition for access to personal juror identifying information.  In support of the petition, defendant's counsel, Felicia Mizrahi, declared:  one of the jurors gave his telephone number to Ms. Mizrahi's colleague, Robin Berkovitz; the juror wanted Ms. Mizrahi to telephone him; later that evening Ms. Mizrahi spoke with the juror; "[t]he juror was clearly emotional and sounded as if he was crying"; "[t]he juror was upset and stated that he did not believe justice was served"; the juror told Ms. Mizrahi, "[H]e was bullied into his guilty verdict and some of the other Jurors felt the same"; the juror said the foreperson had refused to send out a note saying the jury was unable to reach a verdict; and the foreperson said, "[W]e are going to have a verdict, she was clearly a guilty verdict, and they will come every day for the next two months until they were all guilty"; the juror did not send a note out himself because he thought only the foreperson could do so; the juror replied "yes" when the jury was polled because,

---

[1]    Further statutory references are to the Penal Code unless otherwise noted.

"[H]e was scared that he was going to have to go back into the jury room with those people"; and the juror also said, "[A]t some point one of the other jurors left the jury room during deliberations to take a phone call and the deliberations continued while he was gone." Ms. Mizrahi further declared she had asked a defense investigator to interview the juror. And the investigator interviewed the juror four days after the verdict.

Defendant's petition was also supported by an unidentified defense investigator's report. The report states as follows: "The [juror] said that no one on the jury made threats to him. There were no threats made to anyone on the jury. Actually the whole process was very civil. The F word was only dropped a couple of times and was not badly used. The [juror] said that at first he stood his ground for not guilty, it was clear that the forewoman and about 3 other jurors were not going to let them go without a verdict. [¶] The [juror] said that no one personally tried to do anything or say anything to him to dissuade his vote, he was not threatened in any way, there was just a lot of pressure from some of the jurors and the forewoman for a guilty vote. [The forewoman] would not go to the judge saying that they were hopelessly deadlocked, she just kept the talking, discussing and voting. [¶] The [juror] said mostly he did not like the LAPD print procedure, he said that they really only had circumstantial evidence that a[t] first he did not feel was enough but later he voted guilty. LAPD should have used the FBI or some other experts to make their case, it was all just circumstantial. He also said that the Public [D]efender did not challenge anything about the prints, he feels that the Public Defender did wrong for the defendant by not challenging them. [¶] Finally, one of the other jurors (he refused to ID) said if you want my fucking guilty vote then here it is and I vote guilty. The [juror] said at their first vote the jury was 6 to 6, the next vote it was 7 to 5, the next was 9 to 3 and finally they all voted guilty. [¶] The [juror] said he saw some of the jurors using their cell phones in deliberation but he could not hear what they were saying or who they were talking to, he did not know if this was miss conduct [*sic*] or not. [¶] The [juror] said he lost his job because of this jury and is mad about that. [¶] The [juror] said I really should not have spoken to you about this matter. I talked with my friends and they all told me not to talk to you or call you back but I did."

3

The trial court denied the petition.  The trial court found no misconduct and no good cause to release juror information.  The trial court reasoned in part:  "[T]he nature of the [present] information is, in its best light in terms in favor of disclosure, is that one or more jurors felt pressure from the foreperson to render a verdict, and that the foreperson wanted the verdict to be a guilty verdict.  That, in and of itself, is not sufficient because it does not constitute misconduct."

## III.  DISCUSSION

### A.  Defendant's Petition For Release Of Juror Identifying Information

Pursuant to Code of Civil Procedure section 237, subdivision (b):  "Any person may petition the court for access to [the court's record of personal juror identifying information].  The petition shall be supported by a declaration that includes facts sufficient to establish good cause for the release of the juror's personal identifying information.  The court shall set the matter for hearing if the petition and supporting declaration establish a prima facie showing of good cause for the release of the personal juror identifying information . . . ."  The Court of Appeal for the Fourth Appellate District has explained the meaning of "good cause" in the present context:  "Good cause, in the context of a petition for disclosure to support a motion for a new trial based on juror misconduct, requires 'a sufficient showing to support a reasonable belief that jury misconduct occurred . . . .' (*People v. Rhodes* (1989) 212 Cal.App.3d 541, 552; accord, *People v. Wilson* (1996) 43 Cal.App.4th 839, 850-852.)  Good cause does not exist where the allegations of jury misconduct are speculative, conclusory, vague, or unsupported. (See [*People v.*] *Wilson,*[*supra,* 43 Cal.App.4th] at p. 852.)" (*People v. Cook* (2013) 222 Cal.App.4th 1, 13-14.)  There is a strong policy in favor of protecting juror privacy. (*Townsel v. Superior Court* (1999) 20 Cal.4th 1084, 1092; *People v. Duran* (1996) 50 Cal.App.4th 103, 118.)  Our review is for an abuse of discretion.  (*People v. Jones* (1998) 17 Cal.4th 279, 317; *People v. Johnson* (2013) 222 Cal.App.4th 486, 492; *People v.*

4

*Cook, supra,* 222 Cal.App.4th at p. 14.)  No objection on evidentiary grounds was raised in the trial court.  As a result, any objection was forfeited.  (Evid. Code, § 353, subd. (a); *People v. Johnson, supra,* 222 Cal.App.4th at p. 493, fn. 3; *People v. Engstrom* (2011) 201 Cal.App.4th 174, 184; see *People v. Dowl* (2013) 57 Cal.4th 1079, 1087; *People v. Abel* (2012) 53 Cal.4th 891, 924.)

It is well settled that a jury's verdict cannot be impeached by evidence of the jurors' thought processes and reasoning.  (Evid. Code, § 1150, subd. (a); *In re Hamilton* (1999) 20 Cal.4th 273, 294; *People v. Hutchinson* (1969) 71 Cal.2d 342, 349-350.)  As Division Three of the Court of Appeal for this appellate district explained in *Bell v. Bayerische Motoren Werke Aktiengesellschaft* (2010) 181 Cal.App.4th 1108, 1124-1125: "Evidence of jurors' internal thought processes is inadmissible to impeach a verdict. [Evid. Code, § 1150, subd. (a); *People v. Hutchinson*[*, supra,*] 71 Cal.2d [at pp.] 349-350.)  Only evidence as to objectively ascertainable statements, conduct, conditions, or events is admissible to impeach a verdict.  (Evid. Code, § 1150, subd. (a); *In re Hamilton*[*, supra,*] 20 Cal.4th [at p.] 294.)  Juror declarations are admissible to the extent that they describe overt acts constituting jury misconduct, but they are inadmissible to the extent that they describe the effect of any event on a juror's subjective reasoning process. (*In re Stankewitz* (1985) 40 Cal.3d 391, 398.)  Accordingly, juror declarations are inadmissible to the extent that they purport to describe the jurors' understanding of the instructions or how they arrived at their verdict.  (*People v. Dillon* (2009) 174 Cal.App.4th 1367, 1384, fn. 9; *Mesecher v. County of San Diego* (1992) 9 Cal.App.4th 1677, 1684 . . . .)"  (Fn. omitted.)  We must disregard allegations as to the effect the forewoman's behavior had on the jurors' mental processes or their reasons for voting as they did.  (Evid. Code, § 1150; *People v. Lindberg* (2008) 45 Cal.4th 1, 53; *People v. Steele* (2002) 27 Cal.4th 1230, 1261; *People v. Cox* (1991) 53 Cal.3d 618, 694-695, disapproved on another point in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; *People v. Hutchinson, supra,* 71 Cal.2d at pp. 349-351.)  Moreover, according to the sole juror who communicated with defense counsel and her investigator, the deliberations were "civil," and no one was threatened.  Further, during that interview, the juror

admitted nobody tried to dissuade his vote. The record supports the trial court's finding there was no evidence of juror misconduct. The trial court did not abuse its discretion in denying defendant's petition for release of juror information.

At the hearing in the trial court, Ms. Mizrahi made no mention of the assertion that a juror left the jury room while deliberations were occurring. She did not argue that continuing deliberations absent a juror was misconduct. Likewise on appeal, defendant argues only that the foreperson committed misconduct by threatening the jurors with personal and financial hardship. As a result, we do not address the assertion that deliberations continued when one of the jurors was absent. (*Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4; *Johnston v. Board of Supervisors* (1947) 31 Cal.2d 66, 70, disapproved on another point in *Bailey v. County of Los Angeles* (1956) 46 Cal.2d 132, 139.)

### B. The Local Crime Prevention Programs Fine

The trial court imposed the following as conditions of defendant's probation: a $200 restitution fine (§ 1202.4, subd. (b)); a $200 probation revocation restitution fine (§ 1202.44); a $30 court facilities assessment (Gov. Code, § 70373, subd. (a)(1)); a $40 court operations assessment (§ 1465.8, subd. (a)(1)); and a $10 local crime prevention programs fine (§ 1202.5, subd. (a)). We asked the parties to brief the questions whether it was error to impose the court facilities and court operations assessments and the local crime prevention programs fine as a condition of probation. We find that it was. (*People v. Shiseop Kim* (2011) 193 Cal.App.4th 836, 842-843; *People v. Pacheco* (2010) 187 Cal.App.4th 1392, 1402-1403, disapproved on another point in *People v. McCullough* (2013) 56 Cal.4th 589, 599; *People v. Lopez* (2013) 218 Cal.App.4th Supp. 6, 12.) The assessments and fine are proper, however, as orders separate and apart from the conditions of probation. We modify the judgment to so provide.

We also asked the parties to brief the question whether the trial court erred in failing to impose the mandatory penalties and surcharge on the local crime prevention

6

programs fine.  We find this was error.  Because defendant committed the present offense on October 14, 2011, the section 1202.5, subdivision (a) fine was subject to:  a $10 section 1464, subdivision (a)(1) state penalty (Stats. 2007, ch. 302, § 17, eff. Jan. 1, 2008); a $7 Government Code section 76000, subdivision (a)(1) county penalty (Stats. 2010, ch. 720, § 26, eff. Oct. 19, 2010); a $2 Government Code section 76000.5, subdivision (a)(1) emergency medical services penalty (Stats. 2010, ch. 328, § 102, eff. Jan. 1, 2011-Dec. 31, 2013); a $2 section 1465.7, subdivision (a) state surcharge (Stats. 2007, ch. 176, § 63, eff. Aug. 24, 2007); a $3 state court construction penalty under Government Code section 70372, subdivision (a)(1) (Stats. 2010, ch. 720, § 16, eff. Oct. 19, 2010-Dec. 31, 2011); *People v. McCoy* (2007) 156 Cal.App.4th 1246, 1254.); a $1 Government Code section 76104.6, subdivision (a)(1) deoxyribonucleic acid penalty (Stats. 2010, ch. 328, § 103, eff. Jan. 1, 2011-Dec. 31, 2011); and a $3 state-only deoxyribonucleic acid penalty under Government Code section 76104.7, subdivision (a) (Stats. 2011, ch. 36, § 16, eff. June 30, 2011-June 26, 2012).  Thus, the total sum due is $38 when, as here, the trial court imposes the full section 1202.5, subdivision (a) $10 fine plus penalties and a surcharge in Los Angeles County.  (*People v. Knightbent* (2010) 186 Cal.App.4th 1105, 1109; *People v. Castellanos* (2009) 175 Cal.App.4th 1524, 1528-1530; see *People v. Hamed* (2013) 221 Cal.App.4th 928, 935.)  The fine is subject to defendant's ability to pay. (§ 1202.5, subd. (a).)  Therefore, upon remittitur issuance, the trial court must conduct an ability to pay hearing as to the fine together with the penalty assessments.  (*People v. Castellanos, supra,* 175 Cal.App.4th at p. 1531; see *People v. Corrales* (2013) 213 Cal.App.4th 696, 702; but see *People v. Knightbent, supra,* 186 Cal.App.4th at pp. 1112–1113 [no hearing required where the increase in the total sum is minimal and the defendant raised no objection to the $10 fine].)  The trial court may impose the full $10 fine, a lesser amount or none at all.  But if a fine is imposed, the penalties and surcharges must be added. (*People v. Castellanos, supra,* 175 Cal.App.4th at p. 1531; see *People v. Hamed, supra,* 221 Cal.App.4th at p. 936.)

Defendant argues the failure to impose penalties and a surcharge on the fine does not amount to an unauthorized sentence; further, the People waived this issue by failing

7

to raise it at sentencing. We disagree. The sentence was unauthorized insofar as it omitted the penalties and surcharge on the fine. (*People v. Hamed, supra*, 221 Cal.App.4th at p. 941; see *People v. Voit* (2011) 200 Cal.App.4th 1353, 1373.)

## IV. DISPOSITION

The judgment is modified to delete reference to the court facilities and court operations assessments and the local crime prevention programs fine as conditions of probation and to reflect their imposition as separate orders. The imposition of the local crime prevention programs fine under Penal Code section 1202.5, subdivision (a), is reversed. Upon remittitur issuance, the trial court is to conduct an ability to pay hearing as to the fine together with the penalty assessments. The trial court may impose the full $10 fine, a lesser amount or none at all. The judgment is affirmed in all other respects.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

TURNER, P. J.

We concur:

MOSK, J.

MINK, J.*

---

* Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.