Filed 6/23/14  P. v. Fondren CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

| | |
|---|---|
| THE PEOPLE, | C074294 |
| Plaintiff and Respondent, | (Super. Ct. No. CM035757) |
| v. | |
| MICHAEL RENE FONDREN, JR., | |
| Defendant and Appellant. | |

A jury convicted defendant Michael Rene Fondren, Jr., of two counts of assault with intent to commit sodomy or oral copulation (Pen. Code, § 220, subd. (a)(1)),[1] two counts of false imprisonment by violence (§ 236), misdemeanor loitering (§ 647, subd. (h)), and misdemeanor sexual battery (§ 243.4, subd. (e)(1)).  The trial court denied defendant's motion for a new trial and sentenced him to 12 years in state prison.

On appeal, defendant contends the trial court erred in failing to grant a new trial for newly discovered evidence of juror misconduct.  We affirm.

---

[1] Undesignated statutory references are to the Penal Code.

1

**The Crimes**

*Charles H.*

On the night of June 5, 2012, Jacob E. went to Elvia Guevara's birthday party at the home of Adam G. and Charles H. Shortly after 10:00 p.m., defendant approached Jacob E. and offered him a pound of marijuana. The loud music caused defendant and Jacob E. to go around the corner to the side of the house.

Defendant offered to give Jacob E. a pound of marijuana if he let defendant perform oral sex on him. Jacob E. declined, but defendant said, "C'mon, please." Defendant grabbed Jacob E.'s penis twice during the conversation. Jacob E. felt uncomfortable and suggested they should get back to the party. Not wanting to make a big scene, Jacob E. just talked to friends when he got to the kitchen. Jacob E. told a few friends about what happened. Around midnight, he went to Riley's bar with Guevara and Charles H. When Jacob E. returned to the party about 30 minutes later, everyone was upset and Charles H. was crying.

Charles H. returned home from the bar around 12:15 a.m. He did not know defendant, but let him stay because he thought defendant knew someone at the party. Defendant offered Charles H. a pound of marijuana and said he needed to show him something. He asked Charles H. to follow him and then went into a bedroom, where defendant closed the door and pushed Charles H. to the bed.

Charles H. was on his back with his feet touching the floor and defendant standing between his legs. Defendant touched the skin on Charles H.'s lower stomach. He held Charles H. on the bed and pushed him back down every time he tried to move. Defendant offered Charles H. a pound of marijuana for sex, but Charles H. refused. Charles H. repeatedly told defendant to stop, but defendant kept touching him. Defendant eventually unbuttoned Charles H.'s shorts and reached for his genitalia.

Another person entered the bedroom, and Charles H. told defendant, "Get away from me" and "[d]on't touch me." Defendant left the room and was asked to leave the party.

Charles H. and three other people from the party identified defendant at a photographic lineup the following day.

*Christopher H.*

Christopher H. was in Chico visiting his brother on the same day as the Charles H. incident, June 5, 2012. They went to Riley's bar and then the two walked back to the brother's home.

Christopher H. wanted a lighter, so he left his brother and walked the opposite direction from the house. He ran into defendant and asked to use his lighter. Defendant said he had a lighter in his house, put his arm around Christopher H.'s shoulders, and led him down the street to his house. Upon entering defendant's house, the two went into defendant's bedroom.

Defendant told Christopher H. to sit on the bed. After he complied, defendant pushed him down on the bed. Defendant then knelt on the floor between Christopher H.'s legs, touched him on the chest and on the skin of his stomach, and kissed his stomach. When defendant tried to remove Christopher H.'s belt, he told defendant to stop and tried to get up. Defendant offered Christopher H. marijuana to let him finish.

Christopher H. thought defendant was going to perform oral sex on him. He did not fight back out of fear that worse things would happen to him. Defendant eventually let him get up, and then told him to go. Christopher H. left and immediately called 911. He later helped an officer locate defendant's house and identified defendant in a field showup.

*The Apartment Incidents*[2]

Around 2:00 a.m. on June 6, 2012, Zachary Glenn arrived home after working a late shift at a pizzeria. Hearing a knock on the window, Glenn assumed it was his roommate and walked towards the door. Defendant opened the door before Glenn could reach it. Defendant tried to force his way into the apartment. He got about halfway inside the doorway before Glenn forced him out. Glenn then shut the door, locked it, and called the police.

An officer contacted Glenn around 2:07 a.m. After getting a description of defendant, the officer looked through the complex and saw defendant coming out of another unit, apartment 4. When contacted by the officer, defendant claimed he had friends in that apartment but they were sleeping. Defendant was detained and the officer continued his investigation. Glenn later identified defendant in a photographic lineup.

The officer went to apartment 4 and observed that a screen by the dining area in the kitchen was removed and the window was open. The officer determined that screens were removed from two other apartments in the complex.

Defendant told the officer that he had been barbecuing with his roommate that night and drank 10 to 12 beers. He walked to a liquor store for cigarettes at one point, but neither went to a party nor brought Christopher H. to his house. Defendant denied kissing any men that night, saying it was not his thing. He knew nothing about pushing Charles H. onto a bed and never entered apartment 4.

*The Defense*

Testifying on his own behalf, defendant said he went to an apartment complex to find a friend on June 6, 2012. Glenn opened the door and they had a brief conversation.

---

[2] Defendant was charged with two counts of burglary and one count of loitering for this incident. He was convicted of loitering but acquitted on both burglary counts.

4

He did not think that he pushed Glenn. Defendant went to two other apartments to look for the friend. The doors were open at both apartments.

Defendant went to a party at Charles H.'s house on May 27 or May 28. He did not remember any incident with Jacob E. He did not push anyone or get on top of anyone. He admitted trying to kiss Christopher H.

**The New Trial Motion**

Defendant represented himself at trial. Following the verdict, he submitted a written motion for a new trial asserting instructional error, insufficient evidence, prosecutorial misconduct, newly discovered evidence regarding defendant's blood-alcohol level on the day of the incidents, and impeachable material found in the recorded statements of Charles H., Christopher H., and Jacob E..

At a hearing on the motion, defendant asserted an additional ground for a new trial, newly discovered evidence of juror misconduct, that the jury foreperson owned the property where the burglary and loitering charges took place. The evidence in support of this contention was the testimony of defendant's investigator, who testified that the foreperson owned and lived in the apartment complex in question and also owned two adjacent lots, which also have apartments on them.

The investigator did not know if the foreperson still owned the property. According to the investigator, county records showed that a company owned the lot where the apartment complex was located, and the foreperson was the registered owner for the fictitious business name for that company. The company currently owned all three properties, but the investigator did not know when the company first owned them. The company owned the apartment complex at the time of the incident.

Defendant argued that the foreperson's ownership of the properties provided the foreperson with a vested interest in seeing that defendant did not return to the community. He claimed that he could not receive a fair trial in light of the foreperson's failure to disclose this information.

5

The prosecutor responded to the new claim by stating that whether or not the foreperson actually owned the property, defendant did not show how a different result would be probable in the absence of the alleged error in light of the overwhelming evidence of guilt.

The trial court found there was no documentary evidence showing the foreperson in fact owned the property in question. There was also no evidence that the foreperson knew about owning a company that owned the property. In addition, the court found there was insufficient evidence that the company in fact owned the property. Finally, even if the evidence showed that the foreperson owned the property and knew of it, there was no evidence that a different result was probable since defendant was acquitted of the burglary charges related to that property. Defendant's motion was therefore denied.

DISCUSSION

Defendant contends the trial court abused its discretion in denying his new trial motion based on newly discovered evidence of juror misconduct. He claims defendant satisfied two grounds for a new trial, newly discovered evidence, and juror misconduct. He asserts the records that the foreperson owned the property involved in the charged burglaries were admissible, the facts establish misconduct, and the misconduct was prejudicial. We disagree.[3]

---

[3] We reject the Attorney General's contention that defendant forfeited the claim by failing to include it in his written new trial motion. "[W]hile a new trial motion should be made in writing specifying the grounds [citation], there is no statutory requirement to that effect, and the motion need only identify the particular ground or grounds on which it is based." (*People v. Smith* (1993) 6 Cal.4th 684, 705 (conc. opn. of Baxter, J.).) Although the trial court noted that defendant was "sandbagging" the prosecution by bringing the alleged juror misconduct claim for the first time at the hearing, the People did not ask for a continuance and were able to respond to defendant's contention at the hearing. Since the trial court was able to make a ruling on the merits on defendant's contention and the People were not prejudiced, defendant's failure to include the claim in the written motion does not forfeit the contention on appeal.

A trial court's decision whether to grant or deny a new trial motion is discretionary and " ' "will not be disturbed [on appeal] unless a manifest and unmistakable abuse of discretion clearly appears." ' [Citations.]" (*People v. Delgado* (1993) 5 Cal.4th 312, 328.) "When a party seeks a new trial based on juror misconduct, the trial court must determine from admissible evidence whether misconduct occurred and, if it did, whether the misconduct was prejudicial. [Citation.] Prejudice is presumed where there is misconduct. This presumption can be rebutted by a showing no prejudice actually occurred or by a reviewing court's examination of the entire record to determine whether there is a reasonable probability of actual harm to the complaining party. [Citation.]" (*People v. Loot* (1998) 63 Cal.App.4th 694, 697.)

Newly discovered evidence and juror misconduct are grounds for a new trial. (§ 1181, subds. (3), (8).) Although defendant presented the contention under the rubric of newly discovered evidence, he argued to the trial court that the foreperson's misconduct entitled him to a new trial and presented testimony in support of this theory. Since defendant's claim relates to factual matters distinct from the crime, his motion is better treated as based on juror misconduct rather than newly discovered evidence. (See *People v. Posey* (2004) 32 Cal.4th 193, 207 [distinguishing new trial motions based on facts overlapping the crime like insufficient and newly discovered evidence from those relying factual determinations distinct from the crime like juror misconduct].)

A person accused of a crime has the constitutional right to have the charges against him determined by a fair and impartial jury. (U.S. Const., 6th & 14th Amends.; Cal. Const., art. I, § 16; *In re Hitchings* (1993) 6 Cal.4th 97, 110.) Whether a prospective juror can be fair and impartial is tested through voir dire. Voir dire examination is significant because it " ' "serves to protect [a criminal defendant's right to a fair trial] by exposing possible biases, both known and unknown, on the part of potential jurors. Demonstrated bias in the responses to questions on voir dire may result in a juror's being excused for cause; hints of bias not sufficient to warrant challenge for cause may assist

7

parties in exercising their peremptory challenges. The necessity of truthful answers by prospective jurors if this process is to serve its purpose is obvious." [Citation.]' " (*People v. Duran* (1996) 50 Cal.App.4th 103, 111-112.) When a juror conceals relevant facts during voir dire examination, that undermines the jury selection process and constitutes misconduct. (*In re Hitchings, supra*, 6 Cal.4th at p. 111.)

We agree with the trial court that defendant failed to present sufficient evidence of juror misconduct. "[O]rdinarily a trial court does not abuse its discretion in declining to conduct an evidentiary hearing on the issue of juror misconduct when the evidence proffered in support constitutes hearsay. [Citations.]" (*People v. Dykes* (2009) 46 Cal.4th 731, 810.) "Moreover, a trial court does not abuse its discretion in denying a motion for new trial based upon juror misconduct when the evidence in support constitutes unsworn hearsay. [Citations.]" (*Ibid.*) Defendant did not present any authenticated records from the county recorder's office establishing the foreperson's ownership interest in the apartment complex. Although authenticated public records are an exception to the hearsay rule (Evid. Code, § 1280), an investigator's testimony regarding the alleged contents of a public record is not admissible to prove the public record's content.

Evidence Code section 1523 provides: "(a) Except as otherwise provided by statute, oral testimony is not admissible to prove the content of a writing. [¶] (b) Oral testimony of the content of a writing is not made inadmissible by subdivision (a) if the proponent does not have possession or control of a copy of the writing and the original is lost or has been destroyed without fraudulent intent on the part of the proponent of the evidence. [¶] (c) Oral testimony of the content of a writing is not made inadmissible by subdivision (a) if the proponent does not have possession or control of the original or a copy of the writing and either of the following conditions is satisfied: [¶] (1) Neither the writing nor a copy of the writing was reasonably procurable by the proponent by use of the court's process or by other available means. [¶] (2) The writing is not closely related

8

to the controlling issues and it would be inexpedient to require its production.  [¶]  (d) Oral testimony of the content of a writing is not made inadmissible by subdivision (a) if the writing consists of numerous accounts or other writings that cannot be examined in court without great loss of time, and the evidence sought from them is only the general result of the whole."

Defendant did not provide at trial or on appeal any reason to depart from the general rule of inadmissibility regarding oral testimony about a writing's content.  The investigator's testimony was therefore incompetent to prove the content of the county records regarding ownership of the apartment complex.  Defendant could have, but did not, prove ownership of the complex through certified copies of the relevant public records.  (Evid. Code, §§ 1530, 1531.)  Since the investigator's testimony was the only evidence of juror misconduct, the trial court correctly denied defendant's motion for a new trial.

### DISPOSITION

The judgment is affirmed.


    BLEASE    , Acting P. J.


We concur:


    NICHOLSON    , J.


    HOCH    , J.

9