Filed 9/19/23  P. v. Hernandez-Delgado CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALEJANDRO HERNANDEZ-DELGADO,<br><br>    Defendant and Appellant. | H050281<br>(Monterey County<br>Super. Ct. No. SS140200A) |

## I.  INTRODUCTION

A jury convicted defendant Alejandro Hernandez-Delgado of first degree murder (Pen. Code, § 187, subd. (a)) and the jury found true gang and firearm allegations (Pen. Code, §§ 186.22, subd. (b)(1)(C), 12022.53, subd. (d)).  The trial court sentenced defendant to prison for a total of 50 years to life.  This court affirmed the judgment. (*People v. Hernandez-Delgado* (Dec. 11, 2018, H043755) [nonpub. opn.].)[1]

---

[1] On our own motion, we take judicial notice of our opinion affirming the judgment in defendant's initial appeal, along with the record in defendant's appeal of a postjudgment order of the trial court.  We also grant defendant's motion to take judicial notice of his petition for a writ of mandamus, the opinion from defendant's appeal of a postjudgment order of the trial court, the register of actions from defendant's initial appeal petitioning the California Supreme Court for review, and several components of the clerk's transcript and reporter's transcript in the record of defendant's initial appeal. (Evid. Code, § 452, subd. (d)(1).)

Defendant appeals from the trial court's postjudgment order denying his motion for an evidentiary hearing pursuant to *People v. Hedgecock* (1990) 51 Cal.3d 395 (*Hedgecock*). Defendant contends that the trial court abused its discretion in denying the motion because he provided sufficient evidence of prejudicial juror misconduct. He also argues the trial court should have granted the motion because the standard for granting a *Hedgecock* hearing should be consistent with the standard for an evidentiary hearing set forth in the California Racial Justice Act of 2020 (Stats. 2020, ch. 317, § 1).

For reasons that we will explain, the trial court lacked jurisdiction to act on defendant's postjudgment motion for a *Hedgecock* hearing. Therefore, defendant's appeal must be dismissed as an appeal from a nonappealable order.[2]

## II. BACKGROUND

Defendant was tried for the shooting of a rival gang member. After first informing the trial court that it was deadlocked, the jury resumed deliberations and returned its verdict. Following defendant's trial, a defense investigator interviewed Juror No. 4 after she was seen crying when the jury returned its verdict. Juror No. 4 told the investigator that when the jury first entered the deliberation room, "everyone just went around to give their initial feelings and in my opinion, many prejudential [*sic*] prejudiced things were said, but in every case, they were corrected." As an example of this, Juror No. 4 said that a female Hispanic juror "mentioned that the fact that [defendant] was from El Salvador . . . made her feel he was more guilty because . . . so many murderers come from El Salvador." However, according to Juror No. 4, "other people right away said, 'You can't use that.' " The juror also said, "We were pretty good about correcting people." Later in the interview, Juror No. 4 stated that the same juror "had made a comment about El Salvadorians and that . . . people from El Salvador, that's where the gangs start and that's where – the kind of scarier people originate from."

---

[2] Defendant also filed a petition for a writ of mandate regarding his requested *Hedgecock* hearing. This court denied the petition.

Juror No. 4 replied negatively when asked if any jury members relied on assumptions to find defendant was a gang member, and she stated that she was particularly convinced of defendant's gang status based on the evidence. When the investigator asked Juror No. 4 whether she observed any other prejudice or bias, Juror No. 4 stated that another juror thought defendant was smirking during trial. However, Juror No. 4 stated: "[W]e were – we all said, you can't use what he looks like – I – look like on either way. I – they reminded me that I couldn't think of him, you know, innocently because of I thought that he looked so young and they couldn't think of him as guilty." When asked whether "anything other than the evidence convicted [defendant]," including defendant's heritage, Juror No. 4 replied negatively. When asked if the jury applied the beyond a reasonable doubt standard of proof, Juror No. 4 replied affirmatively, stating, "The jury deliberated reasonable doubt for a long time." Juror No. 4 stated that no one voiced a refusal to apply the jury instructions, and no juror pressured or intimidated the others. Finally, she stated that the juror who made the comment about defendant's national origin, along with another juror whom Juror No. 4 discussed, "did deliberate, did participate and I think they really did, you know, do their civic duties."

Defendant moved for a new trial based on this information along with statements Juror No. 4 made about other jurors. The trial court denied the motion, noting that other jurors admonished the juror who made the comment about defendant's national origin and finding that it would be improper to "go into the mental processes of jurors to determine what they were thinking when they came to their verdict . . . ." The trial court recognized its discretion to conduct an evidentiary hearing pursuant to *Hedgecock*, but it found such a hearing unnecessary. Sentencing and judgment followed the trial court's denial of defendant's motion for a new trial.

This court affirmed the trial court's judgment. We assumed Juror No. 4's statement was admissible based on the United States Supreme Court's recent decision in

3

*Pena-Rodriguez v. Colorado* (2017) 580 U.S. 206, in which the court held that "where a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant, the Sixth Amendment requires that the no-impeachment rule give way in order to permit the trial court to consider the evidence of the juror's statement and any resulting denial of the jury trial guarantee." (*Id.* at p. 225.) This court also assumed the comments about defendant's national origin constituted misconduct because the juror also referenced facts not in evidence when she told the other jurors, "so many murderers come from El Salvador." However, this court determined defendant did not demonstrate he was prejudiced by the misconduct, noting that the juror who made the comment was immediately reprimanded by other jurors, there was apparently no further discussion on this issue, and the jury extensively deliberated reasonable doubt and circumstantial evidence.

On March 13, 2019, the California Supreme Court denied review of defendant's case. (*People v. Hernandez-Delgado* (Mar. 13, 2019, S253507) [nonpub. ord.].) On November 18, 2019, the United States Supreme Court denied defendant's petition for certiorari. (*Hernandez-Delgado v. California* (Nov. 18, 2019, No. 18-9665) ___ U.S. ___ [140 S.Ct. 527, 205 L.Ed.2d 334].)

In June 2019, defendant petitioned the trial court to unseal identifying juror information pursuant to Code of Civil Procedure section 237 based on Juror No. 4's statements.[3] Defendant asserted that he "must investigate these matters so that he can

---

[3] In relevant part, Code of Civil Procedure section 237, subdivision (a)(2), provides that the court's record of personal juror identifying information shall be sealed upon the recording of a jury's verdict in a criminal jury proceeding. Code of Civil Procedure section 237, subdivision (b), provides: "Any person may petition the court for access to these records. The petition shall be supported by a declaration that includes facts sufficient to establish good cause for the release of the juror's personal identifying information. The court shall set the matter for hearing if the petition and supporting declaration establish a prima facie showing of good cause for the release of the personal juror identifying information, but shall not set the matter for hearing if there is a showing (continued)

4

raise a habeas corpus claim alleging that his state and federal constitutional rights were violated by the juror's reliance on racial stereotypes in reaching a verdict." The trial court denied the petition, finding that "defendant has failed to establish a prima facie showing of good cause to justify the disclosure."

Defendant appealed the trial court's denial of the petition. This court reversed the trial court's order and directed the trial court to set this matter for a hearing pursuant to subdivisions (b) and (c) of Code of Civil Procedure section 237. This court noted that the standard for establishing good cause for the disclosure of identifying juror information is different from the standard for establishing the right to a new trial, in that defendant's petition to disclose identifying juror information did not have to demonstrate a substantial likelihood that he suffered actual harm from the alleged misconduct. (*People v. Hernandez-Delgado* (May 1, 2020, H047257) [nonpub. opn.].)

Upon remand, the trial court provided the defense with contact information for seven of the jurors from defendant's trial who did not object to the release of their information. The defense interviewed each of these seven jurors; none remembered the comments Juror No. 4 had recounted about defendant's national origin. Juror No. 4 was not among these seven jurors whose information was released. The defense moved for leave to re-contact Juror No. 4 to ascertain the identity of the juror who purportedly made the comments. The trial court denied the motion.

Defendant then moved the court to conduct a *Hedgecock* hearing. Defendant asserted that material, disputed issues of fact remained as to the identity of the juror who purportedly made the comments, whether that juror relied upon her beliefs purportedly expressed in the comments in reaching a verdict, and whether any other jurors relied

on the record of facts that establish a compelling interest against disclosure. A compelling interest includes, but is not limited to, protecting jurors from threats or danger of physical harm. If the court does not set the matter for hearing, the court shall by minute order set forth the reasons and make express findings either of a lack of a prima facie showing of good cause or the presence of a compelling interest against disclosure."

5

upon the beliefs reflected in the purported comments.  The prosecution opposed the motion.  The prosecution asserted the trial court had no authority to grant the motion because defendant's judgment was final, and defendant did not meet the standard for a *Hedgecock* hearing because he did not come forward with evidence demonstrating a strong possibility that prejudicial misconduct occurred.

The trial court denied defendant's motion for a *Hedgecock* hearing.  The trial court cited the earlier ruling (by a different trial judge) denying defendant's motion for a new trial, along with the fact that none of the seven jurors the defense contacted remembered the comments Juror No. 4 recounted.  The court then concluded:  "I don't think there's any statutory authority to hear this motion.  Notwithstanding that, assuming for the sake of argument this motion could be made at this time, the court would respectfully deny it on the merits."  This appeal followed.

## III.  DISCUSSION

In *Hedgecock*, a jury convicted the defendant of conspiracy to violate state and local financial disclosure laws and perjury.  (*Hedgecock*, *supra*, 51 Cal.3d at p. 399.)  After his conviction but before his judgment was final, defendant moved for a new trial based in part on allegations that a bailiff attempted to influence the jury's deliberation process and that bailiffs and various jurors used alcohol during deliberations.  (*Id.* at p. 411.)  Jurors and the bailiffs provided conflicting declarations as to what occurred.  (*Id.* at pp. 411–414.)  The trial court refused to hold an evidentiary hearing and, based upon the declarations submitted, the trial court denied defendant's motion for a new trial.  (*Id.* at p. 414.)  The California Supreme Court reversed, holding that "when a new trial motion in a criminal case is based on allegations of juror misconduct, the trial court may conduct an evidentiary hearing to determine the truth of the allegations."  (*Id.* at p. 415.)

The *Hedgecock* court did not specifically enunciate the time frame in which the trial court may conduct this evidentiary hearing.  However, the court stated that the basis for such a hearing is a motion for a new trial under Penal Code section 1181.

6

(*Hedgecock*, *supra*, 51 Cal.3d at p. 415.)  Under this provision, the trial court may, upon application, grant a new trial in nine listed situations "[w]hen a verdict has been rendered or a finding made against the defendant . . . ."  (Pen. Code, § 1181.)  The court in *Hedgecock* discussed Penal Code section 1181, including its statement that a defendant may apply for a new trial when " 'the jury has . . . been guilty of any misconduct by which a fair and due consideration of the case has been prevented . . . .' "  (*Hedgecock*, *supra*, at p. 415, citing Pen. Code, § 1181, subd. (3).)  After analyzing language in Penal Code section 1181 and concluding that this statute does not preclude an evidentiary hearing to support a motion for a new trial, the court concluded that "when a criminal defendant moves for a new trial based on allegations of jury misconduct, the trial court has discretion to conduct an evidentiary hearing to determine the truth of the allegations." (*Hedgecock*, *supra*, at p. 415.)

*Hedgecock* therefore tied an evidentiary hearing concerning alleged juror misconduct to a motion for a new trial.  A motion for a new trial must be made before judgment.  "The application for a new trial must be made and determined before judgment, the making of an order granting probation, the commitment of a defendant for observation as a mentally disordered sex offender, or the commitment of a defendant for narcotics addiction or insanity, whichever first occurs, and the order granting or denying the application shall be immediately entered by the clerk in the minutes."  (Pen. Code, § 1182.)  Appellate courts have long recognized that under Penal Code section 1182, a trial court may not act upon a motion for a new trial after judgment has been entered. (See *People v. Sainz* (1967) 253 Cal.App.2d 496, 500 ["An application for a new trial must be made and determined before judgment; after judgment has been entered the court has no jurisdiction to hear the motion"]; *People v. Hales* (1966) 244 Cal.App.2d 507, 511 ["It is axiomatic . . . that a motion for new trial cannot be entertained or granted after judgment is entered."].)

7

" 'If the judgment is vacated or set aside, the motion for new trial may then be entertained.  [Citations.]' " (*People v. Pineda* (1967) 253 Cal.App.2d 443, 449 (*Pineda*).)  However, if "it is clear that the question of guilt was finally determined on the prior appeal, and that there was no intent to vacate the judgment to permit further inquiry regarding that issue," then a motion for a new hearing may not be brought.  (*Id.* at p. 450.)  "To permit a new attack on the conviction in the trial court [after judgment] is to grant the trial court the unwarranted power to rehear a decision of the appellate court." (*Id.* at p. 451.)  Thus, "[t]he affirmance of the issue of guilt on the first appeal precludes subsequent review by the trial court on a motion for new trial."  (*Id.* at p. 453.) Accordingly, in *People v. Oppenheimer* (1965) 236 Cal.App.2d 863, the Court of Appeal held that because the appellate court had remanded the defendant's case only to correct an improper grant of probation, "it follows that the time for making a motion for a new trial had long since passed, since, under Penal Code section 1182, such a motion must be made prior to judgment," and that "the court had no power to receive, or to act upon, the motion." (*Id.* at p. 866.)

In *People v. Duran* (1996) 50 Cal.App.4th 103 (*Duran*), the defendant sought disclosure of a juror's information to determine whether the juror's involvement in another homicide case was discussed during deliberations.  (*Id.* at pp. 108–110.)  The trial court denied the requested disclosure and imposed judgment.  (*Id.* at p. 110.)  The Court of Appeal affirmed, finding the trial court did not err in declining to permit the defendant to question the juror further.  (*Id.* at pp. 114, 123.)  The appellate court held that the request was not timely made because the defendant "was clearly seeking the information in hopes of obtaining additional support for his motion for new trial."  (*Id.* at p. 122.) Because a motion for a new trial must be filed before judgment, the Court of Appeal held that "in order for the requested information to be used for the lawful purpose for which it was sought," the trial court would have had to delay imposition of judgment.  (*Ibid*.) Because the Court of Appeal found there was no basis for a continuance in imposing

judgment, it held that the trial court "acted properly in denying the untimely request for juror information." (*Id.* at p. 123.)

Here, defendant's motion for a *Hedgecock* hearing was untimely, and thus the trial court lacked the authority to grant it. Defendant sought access to juror information not only after judgment but after the completion of appellate review. Thus, the instant case presents an even clearer example of an untimely request for juror information than *Duran*.

This court's remand on the Code of Civil Procedure section 237 petition does not alter the conclusion that defendant's later postjudgment motion for a *Hedgecock* hearing was untimely. In defendant's initial appeal, this court affirmed the judgment, concluding that the trial court properly denied defendant's motion for a new trial. Defendant later petitioned to unseal identifying juror information pursuant to Code of Civil Procedure section 237, and the trial court denied the petition. In reversing the trial court's denial of this petition, this court specifically noted that the standard under Code of Civil Procedure section 237 is different from the standard for granting a motion for a new trial, and we reversed with directions only that the trial court set the matter for hearing on the petition pursuant to subdivisions (b) and (c) of Code of Civil Procedure section 237. The trial court conducted further proceedings and provided defendant with access to additional juror information, which did not support defendant's claim of bias. Defendant's stated rationale for his Code of Civil Procedure section 237 petition was to support a possible habeas claim, not a motion for a new trial. In this situation, "it is clear that the question of guilt was finally determined on the prior appeal, and that there was no intent to vacate the judgment to permit further inquiry regarding that issue." (*Pineda*, *supra*, 253 Cal.App.2d at p. 450.) Thus, defendant was no longer able to move for a new trial, and the motion for a *Hedgecock* hearing was untimely.

Defendant argues that the trial court should nonetheless be permitted to entertain his motion for a *Hedgecock* hearing, citing the statement in *People v. Picklesimer* (2010)

9

48 Cal.4th 330, 339 (*Picklesimer*) that "every right must have a remedy." Thus, he argues: "Even assuming there is no direct statutory authority for the superior court to hold a *Hedgecock* hearing when a defendant can no longer request a new trial, [defendant] must have some avenue to vindicate his rights . . . to question the juror who expressed racial bias against him." However, *Picklesimer* does not support defendant's argument.

In *Picklesimer*, the California Supreme Court recognized that its previous decision that imposition of mandatory lifetime sex offender registration for certain defendants violated equal protection rights "resulted in the creation of a class of people, those convicted of violating [Penal Code] section 288a, subdivision (b)(1) on or before the date of our decision, who potentially might be entitled to relief from mandatory lifetime registration but for whom the precise procedural method of asserting such a claim for relief was uncertain." (*Picklesimer*, *supra*, 48 Cal.4th at p. 335.) The defendant filed a postjudgment motion for relief from sex offender registration requirements, and the trial court denied the motion, ruling that it lacked jurisdiction. (*Id.* at p. 336.) The Court of Appeal dismissed the appeal, and the California Supreme Court affirmed the dismissal. (*Id.* at pp. 336, 346.) The California Supreme Court concluded that in the state's "long-since-final criminal prosecution" of the defendant: " '[t]here is no statutory authority for a trial court to entertain a postjudgment motion that is unrelated to any proceeding then pending before the court. [Citation.] Indeed, a motion is not an independent remedy. It is ancillary to an on-going action and " 'implies the pendency of a suit between the parties and is confined to incidental matters in the progress of the cause. As the rule is sometimes expressed, a motion relates to some question collateral to the main object of the action and is connected with, and dependent on, the principal remedy.' " [Citation.] In most cases, after the judgment has become final, there is nothing pending to which a motion may attach.' [Citation.]" (*Id.* at p. 337.) The court noted that exceptions to the rule precluding postjudgment motions exist, generally where the Legislature has

10

expressly authorized a motion, but none of these exceptions applied to the defendant. (*Id.* at p. 337 & fn. 2.) The court also held that the preferred method for the defendant to challenge his situation was to petition for a writ of habeas corpus in the trial court. (*Id.* at p. 339.)

Similarly here, defendant filed a postjudgment motion after his case was final, and he does not demonstrate that any exceptions apply to the general rule precluding postjudgment motions. To the contrary, Penal Code section 1182 indicates that his motion is untimely. *Picklesimer* states that every right must have a remedy, but it states that a postjudgment motion is generally not a valid remedy. (*Picklesimer*, *supra*, 48 Cal.4th at pp. 338–339.) Thus, *Picklesimer* supports that the trial court here lacked the authority to entertain defendant's motion for a *Hedgecock* hearing.

Defendant also argues that Code of Civil Procedure section 187 creates jurisdiction for the trial court to entertain his motion. This statute provides: "When jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code." (Code Civ. Proc., § 187.) In *Picklesimer*, the court rejected the argument that Code of Civil Procedure section 187 created jurisdiction for the trial court to address the defendant's postjudgment motion. The court stated: "The section does not speak to jurisdiction; it does not create jurisdiction; rather, the existence of jurisdiction is the premise for its application. Where jurisdiction exists from other sources, Code of Civil Procedure section 187 grants courts authority to exercise any of their various powers as may be necessary to carry out that jurisdiction. To the extent jurisdiction to hear Picklesimer's motion is otherwise lacking, Code of Civil Procedure section 187 affords Picklesimer no comfort here." (*Picklesimer*, *supra*, 48 Cal.4th at p. 338, fn. omitted.) The same analysis

11

applies in the instant case. The trial court had no jurisdiction to entertain defendant's motion for a *Hedgecock* hearing, and Code of Civil Procedure section 187 provides the trial court no additional authority to do so.

Defendant also cites Code of Civil Procedure section 128 in asserting the trial court had jurisdiction to act on his motion for a *Hedgecock* hearing. This statute does not support his argument. The portions of the statute defendant cites state that every court shall have the power to "control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto," and to "amend and control its process and orders so as to make them conform to law and justice." (Code Civ. Proc., § 128, subds. (a)(5), (a)(8).) This statute, which has been applied to criminal cases in certain circumstances, "does not recognize an inherent right to reconsider a final order or judgment based on an erroneous interpretation of the law or facts." (*People v. McGee* (1991) 232 Cal.App.3d 620, 626.) Code of Civil Procedure section 128 is "limited to correction of clerical errors, setting aside judgments or orders inadvertently made and not the result of an exercise of judgment, prevention of the wrongful use of process rightfully issued, and other powers inherently necessary for the court to make its judgments speak the truth and to insure that its orders are carried out in accordance with the court's intentions." (*Smith v. Superior Court* (1981) 115 Cal.App.3d 285, 291, fn. 2.) Code of Civil Procedure section 128 does not create authority for the trial court to act upon defendant's motion for a *Hedgecock* hearing.

Finally, defendant recognizes that raising this issue in a petition for a writ of habeas corpus is possible, but he argues that he has not yet done so "because of concerns that access to juror information may rest with the trial court in all instances, and because of the need to avoid piecemeal or successive habeas petitions." As to the first point, he recognizes that it is "possible to take testimony from jurors in habeas evidentiary hearings," but "it appears that the superior court maintains control over sealed juror

12

information throughout *all* stages of a case." Because the trial court already ruled in the Code of Civil Procedure section 237 proceedings that it would not release information about the jurors who did not consent to release of their information, defendant argues that "a juror misconduct evidentiary hearing in habeas proceedings might be limited to the jurors whose information has been released, unless more information is developed through a *Hedgecock* hearing." As to the latter point, defendant cites *In re Friend* (2021) 11 Cal.5th 720, 743 (*Friend*) for the proposition that piecemeal or successive habeas petitions are prohibited.

Neither point defendant raises concerning the undesirability of habeas proceedings alters our conclusion that the trial court had no jurisdiction to act on defendant's postjudgment motion for a *Hedgecock* hearing. Defendant's judgment is final, so the trial court had no authority to act upon defendant's motion regardless of the points defendant raises concerning habeas proceedings. In addition, as to defendant's first point that an evidentiary hearing on a habeas petition would not allow him access to jurors who objected to release of their information, the trial court has already ruled in the Code of Civil Procedure section 237 proceedings that defendant cannot contact these jurors. Defendant exhausted his possibilities for relief pursuant to this statute, and the trial court's ruling in those proceedings is not before us. (See *People v. Diaz* (2015) 235 Cal.App.4th 1239, 1245 [finding the defendant's petition for juror information filed after the defendant's conviction, sentence, and affirmance on appeal untimely, and holding that the trial court's order denying the defendant's petition on its merits was not appealable.] As to defendant's second point, *Friend* merely states that "counsel has the duty, in the initial petition, of investigating and presenting all claims that could be discovered and presented at that time through due diligence. [Citations.]" (*Friend*, *supra*, 11 Cal.5th at pp. 743–744.) Defendant does not demonstrate why he cannot discover and present "all claims" of potential juror bias in a habeas petition, or why he would need to file

successive petitions without the benefit of a *Hedgecock* hearing. Regardless, neither argument affects the trial court's lack of jurisdiction over his postjudgment motion.

Defendant's judgment has long since taken place, and appellate review of the judgment was completed in November 2019. His motion for a *Hedgecock* hearing is " 'unrelated to any proceeding then pending before the court,' " and " 'there is nothing pending to which [his] motion may attach.' " (*Picklesimer*, *supra*, 48 Cal.4th at p. 337.) Thus, the trial court "acted properly in denying the untimely request for juror information." (*Duran*, *supra*, 50 Cal.App.4th at p. 123.)

Because the trial court lacked jurisdiction to act upon defendant's motion for a *Hedgecock* hearing, the trial court's order denying the motion is not appealable. Defendant cites Penal Code section 1237, subdivision (b), for the proposition that the trial court's order is appealable. This provision states that an appeal may be taken from "any order made after judgment, affecting the substantial rights of the party." (Pen. Code, § 1237, subd. (b).) However, "[a] trial court order denying relief that the court has no jurisdiction to grant does not affect a defendant's substantial rights and is therefore not appealable under [Penal Code] section 1237, subdivision (b). [Citations.]" (*People v. King* (2022) 77 Cal.App.5th 629, 639.) Penal Code section 1237, subdivision (b) "makes appealable a court's postjudgment order if that order affects a defendant's substantial rights. An order denying a motion the court lacks jurisdiction to grant does not affect a defendant's substantial rights. [Citation.] Any appeal from such an order must be dismissed. [Citation.]" (*People v. Alexander* (2020) 45 Cal.App.5th 341, 344.) For these reasons, the Court of Appeal concluded that the order in *Picklesimer* was unappealable and the appeal must be dismissed, and the California Supreme Court affirmed the judgment of the Court of Appeal. (*Picklesimer*, *supra*, 48 Cal.4th at pp. 336, 346.) Accordingly, defendant's appeal must be dismissed.

Because defendant's appeal must be dismissed, we do not decide defendant's claim that the trial court abused its discretion in denying the motion for a *Hedgecock*

14

hearing on the merits or his argument that the trial court should have applied the standard outlined in the California Racial Justice Act of 2020 (the Act) to his motion. Nothing in the Act states that it independently creates jurisdiction for the trial court to entertain a postjudgment motion for a *Hedgecock* hearing. The Act enacted Penal Code section 745, which provides that a violation of the Act occurs if, during trial, a juror "used racially discriminatory language about the defendant's race, ethnicity, or national origin, or otherwise exhibited bias or animus towards the defendant because of the defendant's race, ethnicity, or national origin, whether or not purposeful." (Pen. Code, § 745, subd. (a)(2).) To seek relief under the Act, the defendant "may file a motion in the trial court or, if judgment has been imposed, may file a petition for writ of habeas corpus or a motion under [Penal Code] Section 1473.7 in a court of competent jurisdiction . . . ."[4] (Pen. Code, § 745, subd. (b).) The Act initially applied just to "all cases in which judgment is not final." (Pen. Code, § 745, subd. (j)(1).) However, the Act also phases in application to various categories of cases where the judgment is final. (Pen. Code, § 745, subds. (j)(2)–(j)(5).) The only avenues specified in the Act for a defendant whose judgment has been imposed are to file a petition for a writ of habeas corpus or a motion under Penal Code section 1473.7 in a court of competent jurisdiction. Nothing in the Act states that the Act grants a trial court the authority to act on a postjudgment motion for a *Hedgecock* hearing. If defendant wishes to seek relief under the Act when he becomes eligible to do so, he must follow the provisions outlined in the Act.

## IV. DISPOSITION

Defendant's appeal is dismissed.

---

[4] Penal Code section 1473.7 states that a person who is no longer in criminal custody may file a motion to vacate a conviction or sentence for any of the listed reasons.

15

_____

BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____

DANNER, J.

_____

WILSON, J.

*People v. Hernandez-Delgado*
**H050281**